GEORGE W. ENNIS

*v.*

MAHLON HUTCHINSON and others.

A yacht was built and owned by four persons, under a written agreement that S. was to be the general manager at B., and C. the treasurer and disburser at P. The yacht was built at B., and delivered at P. to E., the complainant, who furnished one-fourth of the contract price. Afterwards, without E.'s knowledge, the yacht was taken by S. from P. to B., and there, in E.'s absence, and without his knowledge, certain liens were filed against her, some of which were for work included in the contract for building, and others for alleged services or claims of S. and the other part-owners. Under these claims the yacht was sold at sheriff's sale and bought by S.—*Held*, that S. must, under the circumstances, be decreed to hold the yacht in trust for all of her owners, and that she be sold under the direction of this court, in order that a partition with due adjustment and allowance of claims of the owners may be made among them.

Bill for relief. On final hearing on pleadings and proofs.

*Mr. C. Ewan Merritt*, for complainant.

*Mr. G. S. Cannon*, for defendant.

THE CHANCELLOR.

On the 5th of November, 1875, an agreement, in writing, was made between the complainant, Edward L. Stewart, John L. Bryant and Thomas Carstairs, by which they asso-

Ennis *v.* Hutchinson.

ciated themselves together in the construction and mainte-
nance of a steam yacht, for profit and pleasure. Their shares
in the vessel, when constructed, were thereby declared to be
as follows : Stewart and Carstairs each two-sixths, and
Bryant and the complainant each one-sixth. It was pro-
vided that no member of the association could sell or dis-
pose of his interest without the agreement, in writing, of
each and every other member. By the agreement Stewart
was constituted and appointed manager of the interests of
the association at Bordentown, and Carstairs treasurer, at
Philadelphia, and it was declared to be the duty of the
latter to keep correctly all the books and papers, which
were at all times to be at the disposal of the members for
inspection ; that all moneys were to be paid to the treasurer,
whose accounts were to be audited by the members, and all
bills were to be contracted and paid by him. The vessel
was built at Bordentown, by Holmes, Shaw, Brown & Co.,
and was delivered to the complainant, who, on the delivery,
paid to them $450 in full for the balance of the contract
price, except $33.52. The cost of the vessel, according to
the contract originally made, was $4,400; but additions and
alterations were made, by which the cost was increased.
The complainant alleges in his bill, and it is not denied by
the answer, that of the original contract price he paid one-
fourth, $1,100.

It appears that the enterprise was not successful. In the
absence of the complainant, and without his knowledge, the
vessel was taken, by Stewart, from Philadelphia to Borden-
town, and, after she had been there about a month, proceed-
ings were instituted against her under the act "for the collec-
tion of demands against ships, steamboats and other vessels,"
by Michael McGovern, who claimed that there was due to
him the sum of $117.50, for painting done in the construction
of the vessel. Under these proceedings a claim of $92 was
proved and put in by Charles D. Whittaker, and Stewart,
Bryant and Carstairs also proved and put in claims. Those
of Stewart amounted to $901.50; that of Bryant was for

$497.91; aud that of Carstairs was for $160.   The vessel
was sold by the sheriff, under the proceedings, and bought
by Stewart for $1,434.   He still holds her, and claims to be
absolute owner of her.   The complainant filed his bill to
prevent distribution of the proceeds, and to obtain a decree
that Stewart holds the vessel in trust for the complainant
and the other owners thereof.

Of the claim of $117.50, on which the proceedings were
commenced, $65 were for work (painting) which was
included in the original contract price for the vessel, the
balance of which, as before mentioned, was, except $33.52,
paid to Holmes, Shaw, Brown & Co., by the complainant,
on the 24th of June, 1876.   That work was done by the
claimant, not for the owners of the vessel, but for Holmes,
Shaw, Brown & Co.   Stewart, in his testimony, says "the
contract made with Holmes, Shaw, Brown & Co. included
the work done by McGovern."   Bryant testifies that the
contract included the painting.   There is room for suspi-
cion, seeing that out of the $1,768.91 of claims proved
against the vessel under the proceedings, all except $209.50
were put in by three of the owners of the vessel for their
expenditnres on or in connection with the vessel, that, so far
as those owners were concerned, the proceedings were ami-
cable, at least, if they were not, indeed, taken by their pro-
curement, or at their instigation or instance.   It appears
that Bryant and Stewart were dissatisfied, because, as they
alleged, the complainant and Carstairs failed to pay their
shares of the expenditures made by the former for or in con-
nection with the vessel, and Stewart, to whom she had been
delivered by Bryant, took her to Bordentown.

The bill alleges that the associates were partners in the
construction and equipment and use of the vessel, and the
answer admits it; but apart from that, if the owners be
considered merely tenants in common of her, equity
requires that Stewart shall not, under the circumstances,
have the benefit of this purchase.   If the proceedings were
in invitum (which does not by any means appear), the rela-

Ennis v. Hutchinson.

tion between the parties would prompt the court to relieve the complainant if it could equitably do so.

The complainant swears that he had no notice of the sale; that his business is that of a traveling salesman, and he is absent from home most of the time; that when he left home he had paid all that he was required to pay; that he was absent from home, traveling through the east and west, from January 1st, 1877, to about the 1st of April, following; that when he left home the vessel was lying at the Alms House wharf, on the Schuylkill river; that she was then in charge of Bryant, and he advised the latter to take her to Cramp & Sons' ship-yard and leave her there for sale; that he made the same request of Carstairs, the treasurer; and that he never had notice of any kind that there was to be a sale of the vessel, or that any one had a lien upon her; that he requested Stewart to meet him at the treasurer's office, at any time he might designate, and have all matters settled, but that Stewart never responded; that there was no agreement that Stewart should have pay for superintending the construction of the vessel, for which he charges in his claim, proved as before mentioned, $280; that it was never mentioned; that he has no knowledge of any bills against the vessel for construction, fitting out or equipment, and has no knowledge of any of the claims proved before the commissioner. The enterprise, as before remarked, appears to have been a failure, and the vessel seems not to be suited to business other than that for which she was designed. It is probable that she brought, at the sheriff's sale, as much as could have been got for her at public, and, perhaps, at private sale, but the method which Stewart, Bryant and Carstairs have adopted, or of which they have availed themselves, of obtaining satisfaction of their claims by means of proceedings under the act, cannot, for various reasons, be approved. The complainant has a right to contest those claims.

Stewart will be declared to hold the vessel in trust for himself and the other owners. She will be sold, under the

direction of this court, for the benefit of the owners, to the end that partition may be made, and there will be an account to ascertain the amount to which each is entitled out of the proceeds.